Michael Schumacher (#262403)
**RIGRODSKY & LONG, P.A.**
155 Jackson Street, #1903
San Francisco, CA 94111
Telephone: (415) 855-8995
Facsimile: (302) 654-7530
Email: ms@rl-legal.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FRANCHI, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CALLIDUS SOFTWARE INC., CHARLES M. BOESENBERG, MARK A. CULHANE, KEVIN M. KLAUSMEYER, NINA L. RICHARDSON, MURRAY D. RODE, LESLIE J. STRETCH, and JAMES D. WHITE,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on January 29, 2018 (the "Proposed Transaction"), pursuant to which Callidus Software Inc. ("Callidus" or the "Company") will be acquired by SAP America, Inc. ("Parent") and Emerson One Acquisition Corp. ("Merger Sub," and together with Parent, "SAP").

2. On January 29, 2018, Callidus' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Agreement") with SAP. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Callidus' shareholders, they will receive $36.00 in cash for each share of Callidus common stock they own. The special stockholder meeting at which Callidus' stockholders will vote on the Proposed Transactions is currently scheduled to take place on March 29, 2018.

3. On February 22, 2018, defendants filed a Definitive Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Callidus common stock.

9. Defendant Callidus is a Delaware corporation and maintains its principal executive offices at 4140 Dublin Boulevard, Suite 400, Dublin, CA 94568. Callidus' common stock is traded on the NASDAQ under the ticker symbol "CALD." Callidus is a party to the Merger Agreement.

10. Defendant Charles M. Boesenberg ("Boesenberg") has served as Chairman of the Board of Callidus since 2008 and has served as a director of Callidus since 2006.

11. Defendant Mark A. Culhane ("Culhane") has served as a director of Callidus since 2010.

12. Defendant Kevin M. Klausmeyer ("Klausmeyer") has served as a director of Callidus since 2013.

13. Defendant Nina L. Richardson ("Richardson") has served as a director of Callidus since February 2017.

14. Defendant Murray D. Rode ("Rode") has served as a director of Callidus since June 2014.

15. Defendant Leslie J. Stretch ("Stretch") has served as the President and Chief Executive Officer ("CEO") of Callidus since 2007 and has served as a director of Callidus since July 2008.

16. Defendant James D. White ("White") has served as a director of Callidus since July 2016.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Non-party Parent is a Delaware corporation and a party to the Merger Agreement.

19. Non-party Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

20.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Callidus (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action.

22.     The Class is so numerous that joinder of all members is impracticable. As of January 26, 2018, there were approximately 66,022,377 shares of Callidus common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

27. Callidus, which does business as "CallidusCloud," is the global leader in cloud-based sales, marketing, learning, and customer experience solutions. The Company enables organizations to accelerate and maximize their multi-product strategy with a complete "Lead to Money" suite of solutions that identify the right leads, ensure proper territory and quota distribution, enable sales forces, automate configure price quote, speed up contract negotiations, properly recognize revenue under ASC 606, and streamline sales compensation. Over 6,400 leading organizations, across all industries, rely on Callidus to optimize their multi-product strategy to close more deals faster and for more money.

28. Lead to Money is designed to help companies respond to the changing role of sales and marketing in the redefined buying cycle. In the last decade, buyers are researching and evaluating companies online and are completing a significant portion of their purchases digitally. Callidus' products allows companies to successfully compete in the evolving digital market and turn leads into money by leveraging software solutions that enhance productivity, improve collaboration, and drive sales conversion.

29. The Company provides a suite of Software-as-a-Service ("SaaS") solutions that generate revenue from cloud subscriptions, services, and term licenses. Callidus' SaaS customers typically purchase annual subscriptions, but occasionally will purchase multi-year subscriptions.

30. On January 29, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement. If the Proposed Transaction is approved by Callidus' stockholders, Merger Sub will merge with and into Callidus, and Callidus will become a wholly-owned subsidiary of Parent. If the Proposed Transaction is completed, Callidus' stockholders will be entitled to receive $36.00 in cash for each share of Callidus common stock owned by them.

31. The special meeting of stockholders where Callidus' stockholders will vote on the Proposed Transaction is scheduled to occur on March 29, 2018.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

32. On February 22, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

33. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

34. The Proxy Statement omits material information regarding Callidus' financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Qatalyst Partners LP ("Qatalyst").

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. The Proxy Statement fails to disclose certain important projections of the Company that were used by Qatalyst in its valuation analyses. First, in performing its Discounted Cash Flow Analysis, Qatalyst calculated the present value of "Callidus' forecasted tax attributes outstanding as of December 31, 2022 based on the Company Projections," but the Proxy Statement fails to disclose the Company's projected tax attributes through 2022. Second, Qatalyst used certain consensus third-party research analyst projections (the "Analyst Projections") of the Company in its Selected Companies Analysis and Selected Transactions Analysis, but the Proxy Statement fails to disclose the Analyst Projections that Qatalyst relied upon. The disclosure of each of these projections is material to stockholders so that they can assess the reliability and efficacy of Qatalyst's valuation analyses.

37. Additionally, although SAP has touted the synergies that will result from combining SAP and Callidus, the Proxy Statement fails to quantify and disclose the amount of

synergies that are expected to take place, and whether those synergies were taken into account by Qatalyst in its analyses, and if so, how they were incorporated in the analyses.

38. Further, the Proxy Statement discloses certain projections of Callidus for non-GAAP (generally accepted accounting principles) metrics, including Non-GAAP Operating Income and Unlevered Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

39. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that:

> Some of the Projections are "non-GAAP financial measures," which are financial performance measures that are not calculated in accordance with accounting principles generally accepted in the United States ("GAAP"). These non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures, and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures, because they exclude charges and credits that are required to be included in a GAAP presentation. Accordingly, these non-GAAP financial measures should be considered together with, and not as an alternative to, financial measures prepared in accordance with GAAP.

40. Accordingly, stockholders are entitled to the line item projections used to calculate Callidus' non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

41. With respect to Qatalyst's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the line item projections underlying the Company's unlevered free cash flow and non-GAAP operating income projections through 2023; (ii) Callidus' forecasted tax attributes outstanding through 2023; (iii) the specific inputs and assumptions underlying the discount rates of 9.0% to 15.0% calculated and used by Qatalyst; and (iv) Qatalyst's basis for

7
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

applying a highly unusual dilution factor to its analysis, as well as the Company's implied values when the dilution factor is not applied in the analysis.

42. With respect to Qatalyst's Selected Companies Analysis and Selected Transactions Analysis, the Proxy Statement fails to disclose the Analyst Projections that Qatalyst relied upon in performing its analyses. Further, the Proxy Statement fails to disclose the Company's implied values from Qatalyst's Selected Transactions Analysis based on Qatalyst's analysis of the NTM Revenue multiple using the Company's management projections.

43. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Opinion of Callidus's Financial Advisor; and (ii) Financial Projections.

44. The Proxy Statement omits material information regarding potential conflicts of interest of the Company's executive officers.

45. Specifically, the Proxy Statement fails to disclose whether any representatives of SAP have made any overtures to, or had any conversations with, any of Callidus' executive officers or directors regarding post-merger employing or directorships during the negotiations leading to the execution of the Merger Agreement. Notably, the press release announcing the Proposed Transaction states: "Upon completion of the transaction, SAP expects to consolidate all CallidusCloud product assets within SAP Hybris solutions as part of SAP's Cloud Business Group. The existing management team will continue to lead CallidusCloud." To the extent that any such overtures or conversations have occurred, the Proxy Statement must fully disclose the nature, timing, and substance of those communications.

46. Further, the Proxy Statement indicates that, during the negotiation of the Proposed Transaction, the Company entered into letter agreements with each of its named executive officers to "clarify how the performance goals [set forth in their respective performance-based restricted stock unit ("PSU")] will be measured at the effective time of the merger for purposes of determining pay-out levels," but the Proxy Statement fails to disclose any information regarding the circumstances leading to these letter agreements, who initiated and participated in

these conversations, as well as the substance of these conversations.

47. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background to the Merger; (ii) Interests of Callidus Directors and Executive Officers in the Merger.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Callidus' stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Callidus**

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Callidus is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on

1  the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate
2  disclosure as significantly altering the total mix of information made available in the Proxy
3  Statement and in other information reasonably available to stockholders.

4  55.   The Proxy Statement is an essential link in causing plaintiff and the Company's
5  stockholders to approve the Proposed Transaction.

6  56.   By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and
7  Rule 14a-9 promulgated thereunder.

8  57.   Because of the false and misleading statements in the Proxy Statement, plaintiff
9  and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

58.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.   The Individual Defendants acted as controlling persons of Callidus within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Callidus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as

alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

62. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: March 6, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Michael Schumacher*
Michael Schumacher (#262403)
155 Jackson Street, #1903
San Francisco, CA 94111
Telephone: (415) 855-8995
Facsimile: (302) 654-7530
Email: ms@rl-legal.com

Brian D. Long
Gina M. Serra
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934